(42 Misc. Rep. 284.)

### SPENCER v. CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County. December, 1903.)

1. MUNICIPAL CORPORATIONS—SALARIED EMPLOYÉS—EXTRA WORK.

Charter of City of New York, § 674 (Laws 1901, p. 276, c. 466), forbids its commissioners of public charities from incurring any expense beyond the amount appropriated for the purpose, and from expending any money except as appropriated. A salaried employé of the department was appointed a notary public, and prepared affidavits to lunacy papers taken before him by department and city officials, on a promise by the commissioner that he should be paid at some time. *Held*, that he could recover nothing therefor where the city had made no direct appropriation to pay such fees.

Action by Thomas Spencer against the city of New York. Verdict directed for defendant, and motion for new trial denied.

Morgan & Mitchell (Richard H. Mitchell, of counsel), for plaintiff.

George L. Rives, Corp. Counsel, and Chase Mellen, Asst. Corp. Counsel, for defendant.

¶ 1. See Municipal Corporations, vol. 36, Cent. Dig. § 602.

CLARKE, J. Plaintiff has been an employé of the department of charities since 1896. His duties as inspector were to take any insanity papers that had been made out by the examiners in lunacy, have them signed by the doctors, have them signed by the commissioner, take them to the corporation counsel's office, have them approved, take them to the court and procure the judge's signature, then take them up every evening to the Manhattan State Hospital on Ward's Island. In 1896 he was appointed a notary public, paying the fee required himself, and has been reappointed ever since. By chapter 545, p. 471, of the Laws of 1896, in relation to the insane, no person alleged to be insane can be committed except upon an order of a judge based upon a verified petition made by the person with whom such alleged person resides, or certain relatives, or an overseer of the poor—in this city the commissioner of charities—accompanied by the certificate of two examiners in lunacy. Certain affidavits are required upon such papers. It was such papers, made out to procure the commitment of insane people under the jurisdiction of the commissioner of charities, with which plaintiff had to do. He testified that in 1896 he had a conversation with the then commissioner, Mr. Faure, about taking these affidavits. "I asked Commissioner Faure, what about my getting paid for this work? And he said I would get paid sooner or later; there would be some arrangement made to pay me." Mr. Faure testified, in answer to the question: "Will you please state any conversation that you may have had with Mr. Spencer in reference to payment for the taking of these affidavits?" that such payment would be subsequently arranged for. The plaintiff further testified that every time that his two years (referring to his commission as notary) would run out he would ask the commissioner who was in office at the time if he desired that he should continue the same work that he had been doing, and he said "Yes." That he spoke to Commissioner Keller, who was in office during the period covered by this suit, and had just about the same conversation as he had had with the other commissioners. This suit is to recover the notarial fee of 12 cents for 8,336 affidavits taken between the 15th day of September, 1900, and the 1st day of January, 1902, amounting to $1,080.62. During all this period he was in the receipt of a regular salary of $40 a month. The affidavits so taken were by the medical examiners, the commissioner, the persons who made the service on the insane person, and the relatives. A large proportion were of persons not in the employ of the city; how large a proportion plaintiff could not state.

Plaintiff relies upon Merzbach v. Mayor, 163 N. Y. 16, 57 N. E. 96. But in that case it was not denied "that the district attorney had authority to incur such expenses, and that an appropriation was made each year for the payment thereof through the comptroller." Again the court said, "As he actually rendered the services at the request of an officer authorized to bind the defendant for the expense thereof, he was entitled to recover the legal fees unless the defendant established a waiver." Assuming that the affidavits were taken at the request of the commissioner—though a large proportion thereof were not of public officials—and that they were necessary to complete the legal machinery by which the commissioner, in the performance of his duties,

procured the commitment of the insane poor to a state insane hospital, and that the conversation testified to—"I would get paid sooner or later; there would be some arrangement made to pay me"—was had with Commissioner Faure in 1896, and its effect was continued by relation down to the period in suit, did the city become bound to pay this claim? A distinct defense is interposed "that no appropriation was made, in the manner authorized by law, out of which plaintiff could be or was to be compensated for his services as a notary public apart from his regular salary, nor was any officer of the defendant at whose instance and request said affidavits, or any of them, were taken, authorized to incur on behalf of the defendant any obligation to pay for said services, apart from plaintiff's regular salary as aforesaid." Section 674 of the charter (Laws 1901, p. 276, c. 466) provides:

"The commissioner shall incur no expense for any purpose in excess of the amount appropriated therefor; nor shall he expend any money so appropriated for any purpose other than that for which it was appropriated."

There was no appropriation for the payment of these notarial fees specifically, nor was there in the budget any appropriation for a contingent fund. There is, then, no evidence in the case that the commissioner could incur any such obligation on the part of the city. Rourke v. City of New York, 77 App. Div. 72, 78 N. Y. Supp. 1048; Benjamin v. City of New York, 77 App. Div. 62, 78 N. Y. Supp. 1067; McCabe v. City of New York, 77 App. Div. 637, 79 N. Y. Supp. 176; Knox v. City of New York, 78 App. Div. 371, 78 N. Y. Supp. 985. It is quite possible the commissioner hoped to be able to pay for these services either by having Spencer's salary raised or by getting a direct appropriation. But as neither was done, he was under the inhibition of the statute, and could not bind the city. Plaintiff, being a city employé on a salary, owed his service to the city, and his compensation for his services is not to be increased indirectly without provision of law, or in violation thereof. Both sides having moved for the direction of a verdict, the verdict is directed for the defendant. Motion for a new trial denied. Thirty days' stay and thirty days to make a case.

Motion denied.